**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| FATIMA DRAMMEH <br> 1590 Graniteway Lane <br> Columbus, Ohio 43229 <br> <br> Plaintiff, <br> <br> v. <br> <br> OHIOHEALTH CORPORATION <br> 3535 Olentangy River Road <br> Columbus, Ohio 43214 <br> <br> **Serve Also:** <br> OhioHealth Corporation <br> c/o Terri W. Meldrum, Esq. <br> 3430 OhioHealth Parkway <br> Columbus, Ohio 43202 <br> <br> and, <br> <br> NATASHA ROSE <br> 3535 Olentangy River Road <br> Columbus, Ohio 43214 <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO. <br> <br> JUDGE: <br> <br> <br> <br> **COMPLAINT FOR DAMAGES AND REINSTATEMENT** <br> <br> **JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Fatima Drammeh, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Drammeh is a resident of the City of Columbus, County of Franklin, State of Ohio.

2. OhioHealth Corporation ("OhioHealth") is a resident of the State of Ohio.

3. OhioHealth is a corporation for non-profit with its principal place of business located at 3535 Olentangy River Road, Columbus, Ohio 43214.

4. Natasha Rose is a resident of the State of Ohio.

1

5. At all times herein, Rose was acting in the course and scope of her employment.

6. Rose, is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at OhioHealth and who acted directly or indirectly in the interest of OhioHealth in relation to its employees, and is an employer within the meaning of R.C. § 4112.01 *et seq.*

7. All the material events alleged in this Complaint occurred in Franklin County.

8. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

9. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Drammeh is alleging Federal Law Claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2. ("Title VII") and The Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, et seq.

10. This Court has supplemental jurisdiction over Drammeh's state law claims pursuant to 28 U.S.C. § 1367 as Drammeh's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. Within 300 days of the conduct alleged below, Drammeh filed dually a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the Ohio Civil Rights Commission ("OCRC"), Charge No. 532-2021-02139, against OhioHealth.

13. On or about July 30th, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Drammeh regarding the Charges of Discrimination brought by Drammeh against OhioHealth in EEOC Agency Charge No. 532-2021-02139.

14. Drammeh received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

15. Drammeh has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

16. Drammeh has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## **FACTS**

17. Drammeh is a former employee of OhioHealth.

18. OhioHealth hired Drammeh as a patient support assistant ("PSA") in April 2018.

19. Drammeh is African American.

20. Drammeh worked twelve hour shifts between the Medical Surgical and Orthopedic departments.

21. As a PSA, Drammeh was responsible for discharging patients.

22. As a PSA, Drammeh was responsible for monitoring glucose levels of patients.

23. As a PSA, Drammeh was responsible for helping nurses on staff.

24. Part of Drammeh's job duties required her to lift heavy equipment.

25. Part of Drammeh's job duties required her to lift heavy patients.

26. There were "sitter" positions available as a PSA.

27. "Sitter" positions required a nurse or PSA to sit with designated patients.

28. "Sitter" positions do not require heavy lifting.

29. On or about February 12th, 2020, Drammeh found out she was pregnant.

30. Around February 12th, 2020, Drammeh informed Rose, her manager, of her pregnancy in person.

31. Drammeh's due date was October 9th, 2020.

32. In mid-March 2020, Drammeh received a doctor's note that required her to only participate in light duty work for six weeks.

33. OhioHealth granted Drammeh's accommodation request ("Drammeh's Accommodation Request").

34. After approximately six weeks, OhioHealth denied Drammeh's Accommodation Request and Rose forced Drammeh to return to her usual work schedule.

35. The same "Sitter" position Drammeh had held for six weeks was still available following Drammeh's Accomodation Request denial.

36. Kim Helmsdoerfer is or was an employee of OhioHealth.

37. Helmsdoerfer and Rose were Drammeh's managers at OhioHealth.

38. In or around August 2020, Drammeh lifted a very heavy patient for the second day in a row.

39. Drammeh told Rapp that she was not comfortable lifting this patient, who weighed nearly 300 pounds.

40. Drammeh's initial lift was not successful.

41. Several additional staff members were required to successfully lift this patient.

42. Drammeh suffered lower back pain after lifting this patient.

43. Stephanie Rapp is an employee of OhioHealth.

44. Rapp is a nurse at OhioHealth.

45. In or around August 2020, Drammeh told Rapp that she could not do heavy lifting due to her pregnancy.

46. In or around mid-September 2020, Drammeh experienced pelvic pain.

47. In or around mid-September 2020, Drammeh asked Rose to be removed from the schedule.

48. In or around mid-September 2020, Drammeh informed Rose that the work she was doing was a stressor on her pregnancy.

49. In or around mid-September 2020, Drammeh qualified for FMLA leave.

50. In or around mid-September 2020, Rose told Drammeh the only way she could be removed from the schedule was if she got a doctor's note.

51. Drammeh was not informed of FMLA leave despite requesting time off to protect her health and pregnancy.

52. In or around mid-September 2020 and through the duration of her employment with OhioHealth, Drammeh was required to lift heavy patients and equipment.

53. On or about September 21st, 2020, Drammeh was thirty-six weeks and five days pregnant.

54. On or about September 21st, 2020, there was a "sitter" position available.

55. On or about September 21st, 2020, OhioHealth denied giving the "sitter" position to Drammeh.

56. On or about September 21st, 2020, Drammeh felt something was wrong with her baby.

57. On or about September 21st, 2020, Drammeh could not feel any movement from the baby.

58. On or about September 21st, 2020, Drammeh suffered a placental abruption while at work.

59. On or about September 21st, 2020, Drammeh went into labor.

60. On or about September 21st, 2020, Drammeh's son was still-born.

61. On or about September 21st, 2020, Drammeh lost her baby ("Stillbirth").

62. On or about September 21st, 2020, Drammeh was finally granted leave after her Stillbirth.

63. On or about September 21st, 2020 and for the duration of Drammeh's employment with OhioHealth, Drammeh was off work on maternity leave.

64. Two days after the Stillbirth, Helmsdoerfer requested that Drammeh complete an online acknowledgement of the yearly review for her work.

65. Two days after the Stillbirth, Drammeh explained the loss of her son to Helmsdoerfer.

66. On or about September 25th, 2020, Rose contacted Drammeh to request that she complete the form.

67. Breonna Oberlin is an employee of OhioHealth.

68. Oberlin is a PSA at OhioHealth.

69. Oberlin is Caucasian.

70. Oberlin was pregnant at the same time as Drammeh.

71. Oberlin was allowed to take "sitter" cases due to her pregnancy.

72. A notice was created and placed at the nurse's station requiring available "sitter" case to be given to Oberlin.

73. No such notice was created for Drammeh.

74. OhioHealth provided Oberlin an accommodation.

75. Lauren Fraley is an employee of OhioHealth.

76. Fraley is a PSA at OhioHealth.

77. Fraley is Caucasian.

78. During Drammeh's pregnancy, Helmsdoerfer told Drammeh and the other nurses not to require Fraley to do any heavy lifting because Fraley was trying to get pregnant with IVF.

79. Fraley was not required to do heavy lifting during this time.

80. OhioHealth provided Fraley an accommodation.

81. During her pregnancy, Drammeh was required to do heavy lifting.

82. During her pregnancy, Drammeh was not assigned "sitter" cases.

83. OhioHealth failed to provide Drammeh an accommodation.

84. On or about November 2020, Drammeh was constructively discharged (the "Termination").

85. OhioHealth was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

86. At all times relevant herein, Drammeh was employed by OhioHealth for at least 12 months and had at least 1,250 hours of service with OhioHealth and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

87. OhioHealth has a progressive disciplinary policy ("Discipline Policy").

88. A verbal warning is the lowest level of discipline in the Discipline Policy.

89. Drammeh did not receive a verbal warning before the Termination.

90. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

91. Drammeh did not receive a written warning before the Termination.

92. A termination is the highest level of discipline in the Discipline Policy.

93. OhioHealth knowingly skipped progressive disciplinary steps in terminating Drammeh.

94. OhioHealth knowingly terminated Drammeh's employment.

95. OhioHealth knowingly took an adverse employment action against Drammeh.

96. OhioHealth knowingly took an adverse action against Drammeh.

97. OhioHealth intentionally skipped progressive disciplinary steps in terminating Drammeh.

98. OhioHealth intentionally terminated Drammeh's employment.

99. OhioHealth intentionally took an adverse employment action against Drammeh.

100. OhioHealth intentionally took an adverse action against Drammeh.

101. OhioHealth knew that skipping progressive disciplinary steps in terminating Drammeh would cause Drammeh harm, including economic harm.

102. OhioHealth knew that terminating Drammeh would cause Drammeh harm, including economic harm.

103. OhioHealth willfully skipped progressive disciplinary steps in terminating Drammeh.

104. OhioHealth willfully terminated Drammeh's employment.

105. OhioHealth willfully took an adverse employment action against Drammeh.

106. OhioHealth willfully took an adverse action against Drammeh.

107. The above facts demonstrate that Defendants engaged in a pattern and practice of race discrimination.

108. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

109. There was a causal connection between Drammeh's race and Defendants' constructive discharge of Drammeh.

110. There was a causal connection between Drammeh's gender and pregnancy and Defendants' termination of Drammeh.

111. As a direct and proximate result of Defendant's conduct, Drammeh suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

112. Drammeh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

113. Helmsdoerfer and Rose treated Drammeh differently than other similarly situated employees based on her race.

114. OhioHealth, Helmsdoerfer, and Rose violated Title VII, 42 U.S.C. § 2000e-2 *et seq.* by discriminating against Drammeh due to her race.

115. On or about November 2020, OhioHealth constructively discharged Drammeh as a reasonable person would not have continued working in the discriminatory environment created by Defendant.

116. At all times material herein, similarly situated non-African-American employees were not treated the same as Drammeh.

117. Defendant put Drammeh in a position where she felt she needed to resign based on her race.

118. Defendant violated 42 U.S.C. § 2000e-2 et. seq. when they constructively discharged Drammeh based on her race.

119. Drammeh suffered emotional distress as a result of Defendant' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 2000e-2 et seq.

120. As a direct and proximate result of Defendant' conduct, Drammeh has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.02**

121. Drammeh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

122. Throughout her employment, Drammeh was fully competent to perform her essential job duties.

123. Helmsdoerfer and Rose treated Drammeh differently than other similarly situated employees based on her race.

124. OhioHealth, Helmsdoerfer, and Rose violated R.C. § 4112.02(A) *et seq.* by discriminating against Drammeh due to her race.

9

125. On or about November 2020, OhioHealth constructively discharged Drammeh as a reasonable person would not have continued working in the discriminatory environment created by Defendant.

126. At all times material herein, similarly situated non-African American employees were not treated the same as Drammeh.

127. Defendant constructively discharged Drammeh based on her race.

128. Defendant violated R.C. § 4112.01 et. seq. when they constructively discharged Drammeh based on her race.

129. Drammeh suffered emotional distress as a result of Defendant' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

130. As a direct and proximate result of Defendant' conduct, Drammeh has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

131. Drammeh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

132. Drammeh is a member of a statutorily protected class based on her pregnancy under Title VII, 42 U.S.C. § 2000e-2 *et seq*.

133. Pursuant to the Pregnancy Discrimination Act ("PDA") under Title VII, 42 U.S.C. § 2000e(k) *et seq*., it is unlawful to discriminate against individuals affected by pregnancy, childbirth, or medical conditions related to pregnancy.

134. Defendant were aware that Drammeh was pregnant.

135. Defendant were aware that Drammeh could not continue to lift heavy patients or equipment while pregnant.

136. Defendant were aware that Drammeh was in her third trimester when she lost her son on or about September 21st, 2020.

137. Defendant denied Drammeh the opportunity to take a "sitter" position on or about September 21st, 2020.

138. Defendant treated Drammeh differently than other similarly situated employees based on her gender and her pregnancy.

139. Defendant discriminated against Drammeh on the basis of her gender and pregnancy throughout her employment with the company.

140. Defendant constructively discharged Drammeh's employment without just cause.

141. Defendant constructively discharged Drammeh's employment based on her gender.

142. Defendant' discrimination against Drammeh based on her gender violates Title VII.

143. Defendant' discrimination against Drammeh based on her pregnancy violates the PDA under Title VII.

144. Drammeh suffered emotional distress as a result of Defendant' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e-2 *et seq*.

145. As a direct and proximate result of Defendant' conduct, Drammeh suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT IV: GENDER & PREGNANCY DISCRIMINATION IN VIOLATION OF R.C. § 4112.02**

146. Drammeh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

147. Drammeh is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

148. Pursuant to R.C. § 4112.01(B), pregnancy is a protected class under the Ohio Revised Code, and it is therefore unlawful to discriminate against women or individuals because of pregnancy, illness or medical conditions related to pregnancy, and childbirth.

149. Defendant were aware that Drammeh was pregnant.

150. Defendant were aware that Drammeh could not continue to lift heavy patients or equipment while pregnant.

151. Defendant were aware that Drammeh was in her third trimester when she lost her son on or about September 21st, 2020.

152. Defendant denied Drammeh the opportunity to take a "sitter" position on or about September 21st, 2020.

153. Defendant treated Drammeh differently than other similarly situated employees based on her gender and her pregnancy.

154. Defendant discriminated against Drammeh on the basis of her gender and pregnancy throughout her employment with the company.

155. Defendant constructively discharged Drammeh due to her pregnancy and gender.

156. Defendant terminated Drammeh's employment based on her gender and pregnancy.

157. Defendant' discrimination against Drammeh based on her gender violates R.C. § 4112.01 *et seq.*

158. Drammeh suffered emotional distress as a result of Defendant' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

159. As a direct and proximate result of Defendant' conduct, Drammeh suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

160. Drammeh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

161. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

162. OhioHealth is a covered employer under the FMLA.

163. During her employment, Drammeh qualified for FMLA leave.

164. During her employment, Drammeh requested leave in order to protect her health and pregnancy.

165. Drammeh requested leave from Rose.

166. Rose responded to this request by informing Drammeh that she needed to produce a doctor's note in order to be removed from the schedule and take leave.

167. Drammeh could not find time to visit the doctor and get a note for leave.

168. Defendant failed to inform Drammeh that she qualified for FMLA.

169. Defendant failed to properly advise Drammeh of her rights under the FMLA.

170. Drammeh requested leave before her Stillbirth but did not receive leave until after her Stillbirth.

171. Defendant unlawfully interfered with Drammeh's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

172. Helmsdoerfer's, Rose's, and OhioHealth's failure to inform Drammeh of FMLA leave in response to her request for medical leave constituted interference.

173. Defendant violated section 825.300(c)(1) of the FMLA and interfered with Drammeh 's FMLA rights.

174. As a direct and proximate result of Defendant' conduct, Drammeh is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

### COUNT VI: RETALIATION IN VIOLATION OF THE FMLA

175. Drammeh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

176. During her employment, Drammeh requested medical leave.

177. Drammeh qualified for FMLA Leave.

178. Defendant interfered with Drammeh's use of FMLA Leave.

179. Due to Drammeh's request for FMLA Leave, Defendant retaliated against her.

180. Defendant retaliated against Drammeh by denying Drammeh accommodations that would have alleviated the strain on Drammeh's pregnancy.

181. Defendant retaliated by constructively discharging Drammeh.

182. Defendant willfully retaliated against Drammeh in violation of U.S.C. § 2615(a).

183. As a direct and proximate result of Defendant' wrongful conduct, Drammeh is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

184. Drammeh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

185. Rose intended to cause Drammeh emotional distress or knew that their acts or omissions would result in serious emotional distress to Drammeh.

186. Rose's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

187. As a direct and proximate result of Rose's acts and omissions as set forth above, Drammeh has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

188. As a direct and proximate result of Rose's conduct and the resulting emotional distress, Drammeh has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Drammeh demands from Defendant the following:

(a) Issue an order requiring OhioHealth, Helmsdoerfer, and Rose to restore Drammeh to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Drammeh for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Drammeh claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

/s/ *Gregory T. Shumaker*
Gregory T. Shumaker (0095552)
Trisha Breedlove (0095852)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: greg.shumaker@spitzlawfirm.com
Email: trisha.breedlove@spitzlawfirm.com
*Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Fatima Drammeh demands a trial by jury by the maximum number of jurors permitted.

/s/ *Gregory T. Shumaker*
Gregory T. Shumaker (0095552)
Trisha Breedlove (0095852)
**THE SPITZ LAW FIRM, LLC**
